# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CHARLES SHEPPARD,**

    Plaintiff,

  v.                              Case No. 19-CV-1401

**JULIE LUDWIG, CANDACE WHITMAN,
JOY TASSLER, PAT CHAMBERLIN,
BRUCE SIEDSCHLAG, JARED SPORS,
LAURA BARTOW, JEREMY HANNI,
BRAD MLODZIK, JOHN BAHR,
CO HOLT, CO DUBOIS,
SGT. RAMSEY, JAN BRITT,
WARDEN R. HEPP, and MS. H,**

    Defendants.

## SCREENING ORDER

Plaintiff Charles Sheppard, an inmate confined at Fox Lake Correctional Institution, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. On January 13, 2020, I gave Sheppard the opportunity to file an amended complaint. (ECF No. 11.) He availed himself of that opportunity on January 23, 2020. (ECF No. 12.) As required by the Prison Litigation Reform Act (PLRA), I will screen Sheppard's amended complaint.

*1. Federal Screening Standard*

Under the PLRA, the court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune

from such relief. 28 U.S.C. § 1915A(b). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and it holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

2. *Sheppard's Allegations*

Sheppard explains that he was transferred to Fox Lake Correctional on June 3, 2019 and was assigned to HU-3. HU-3 is a medical unit for inmates with disabilities. According to Sheppard, he is 400 pounds, has diabetes with severe diabetic neuropathy, plantar fasciitis, osteoarthritis in both knees, and back spasms.

2

When he entered Fox Lake, Sheppard had restrictions for a handicap cell, a wheelchair, and a walker; he also had low-bunk and low-tier restrictions.

In his cell was a plastic chair that Sheppard asserts he knew was unable to hold his weight because a similar chair at his prior institution had broken while he was sitting in it. Sheppard explains that, because of his weight, he is unable to sit on his bed to write or type. He also explains that the institution requires that inmates who go to the dayroom bring their chairs and remain seated. According to Sheppard, when he arrived at Fox Lake, there was a sturdier chair for heavier inmates in the basement that was not being used.

Sheppard asserts that he told defendants CO H and CO Dubois that the chair would not hold his weight. He allegedly told them that a similar chair had broken while he was sitting in it and, as a result, he had a medical restriction for a stronger, bariatric chair. Sheppard alleges that they told him to contact Sgt. Paul, but Sgt. Paul was on vacation. They did nothing else to help Sheppard obtain a different chair.

Sheppard told Sgt. Ramsey on second shift the same things he told CO H and CO Dubois, but he also did nothing to help. He allegedly asked Sheppard, "Do I look like a fucking doctor[?]" (ECF No. 12 at 2.) According to Sheppard, he sent a slip to Warden Hepp, explaining how he had been disrespected by Sgt. Ramsey and informing him of his issue with the chair, but Warden Hepp did not respond.

Sheppard then communicated his concerns about the chair to defendants Laura Bartow (the inmate complaint examiner), nurse Julie Ludwig (the head of the Special Needs Committee), and Candace Whitman (the health services manager). He

3

told them his chair legs were bending under his weight, a similar chair at his prior institution failed to hold his weight, and he had a medical restriction for a sturdier chair. None of them addressed Sheppard's concerns.

Sheppard alleges that, about a month later, on July 1, 2019, he was sitting in his chair when it abruptly broke. According to Sheppard, he fell and hit his head on the metal bedframe. Sheppard states that he was rushed to the emergency room and diagnosed with a concussion.

When Sheppard was discharged, the doctor instructed that Sheppard "should relax, not walk and rest." (ECF No. 12 at 3.) Sheppard asserts that health services staff were told to keep an eye on him for a while. According to Sheppard, a couple of days later, on July 3, 2019, defendants Ludwig, Whitman, Bartow, Bahr, Siedschlag, Tassler, Chamberlin, Spors, Hanni, Mlodzik, and Holt reviewed Sheppard's medical files and discussed the fact that he had recently returned from the emergency room with a concussion. Sheppard asserts that, despite knowing about the doctor's instructions that Sheppard should not be walking, they discontinued his restrictions for a wheelchair and pusher.

Sheppard states that, later that night, after walking a "good distance," he started to feel "disoriented" and "loopy." (ECF No. 12 at 3.) Sheppard states that he asked an officer (who is not a defendant) to see if health services could bring his medication to him or if he could be pushed to health services. The officer allegedly called health services on speaker phone, and Sheppard overheard defendant Britt tell the officer that Sheppard's meds would not be delivered to him and, if he wanted

them, he had to walk to health services because his wheelchair restriction had been cancelled.

Sheppard allegedly told Britt that he was unable to walk to health services. Britt allegedly said to Sheppard that, if he wanted to refuse his meds, he had to do it in person at health services. She told Sheppard that, if he did not come to health services to refuse his medication, he would receive a conduct report and be put in segregation. Sheppard asserts that he did not want to get in trouble, so he tried to walk up the hill to health services using his walker. According to Sheppard, he fell and hit his head on the concrete. He remembers lying on the ground and officers putting him in a wheelchair.

   3. *Analysis*

"[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). I will allow Sheppard to proceed on a claim under the Eighth Amendment against Ludwig (the head of the special needs committee) and Whitman (the health services manager) based on his allegations that, despite him telling them that he knew from prior experience that the chair could not hold his weight, that a similar chair broke while he was sitting in it, resulting in a concussion, and that he had a medical restriction for a sturdier chair, they refused to provide him with a sturdier chair despite one being readily available.

I will also allow Sheppard to proceed against Hepp (the warden) and Bartow (the inmate complaint examiner). According to Sheppard, Hepp did not respond to his letter informing him about the chair issue, and Bartow denied his inmate complaint. As non-medical officials, they were obligated to make sure Sheppard was not being ignored. While they had no obligation or authority to second-guess the medical providers' decisions regarding whether a studier chair was required, s*ee Askew v. Davis*, 613 Fed. App'x 544, 548 (7th Cir. 2015), they did have an obligation to investigate Sheppard's complaints that the medical professionals were ignoring him. Development of the record is necessary before I can determine whether Hepp and Bartow did all that the Constitution requires of them, so I will allow him to proceed with this claim.

I will not, however, allow Sheppard to proceed against CO H, CO Dubois, or Sgt. Ramsey based on his allegations that they did not get him a sturdier chair when he asked for one. For a prison official to be liable, he or she must have participated in some way with the alleged constitutional violation. *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir.1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.") (internal quotation marks and citation omitted); *see also Palmer v. Marion Cnty.,* 327 F.3d 588, 594 (7th Cir.2003). Consistent with this reasoning, the Seventh Circuit has explained that, "Public officials do not have a free-floating obligation to put things to rights, disregarding rules … along the way. Bureaucracies divide tasks; no prisoner is

entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

Prison officials will not be found to have been deliberately indifferent simply because they did not immediately respond to an inmate's demands. Of course, this does not mean that a prison official can ignore a medical emergency simply because he or she is otherwise engaged, but Sheppard was not experiencing a medical emergency when he complained to these officers about the chair in his cell. In response to his complaints, CO H and CO Dubois directed Sheppard to their supervisor (who happened to be on vacation) and Sgt. Ramsey sarcastically responded that he was not a doctor, implying that Sheppard needed to raise his complaints to health services.

The only reasonable inference from these allegations is that none of them had the authority or personal responsibility to provide Sheppard a sturdier chair without approval. Thus, they did what they had the authority to do—they directed Sheppard to the people who had the power to give him a different chair. Given that Sheppard was not experiencing a medical emergency at the time he spoke to them, they did not violate the Constitution merely because they told him to raise his concerns through the proper channels.

I will allow Sheppard to proceed on a deliberate-indifference claim under the Eighth Amendment against Ludwig, Whitman, Bartow, Bahr, Siedschlag, Tassler, Chamberlin, Spors, Hanni, Mlodzik, and Holt based on his allegations that they canceled his wheelchair and pusher restrictions days after the emergency room doctor cautioned Sheppard to rest and not walk. Sheppard alleges that he was still suffering the aftereffects of his concussion when these defendants decided to remove his wheelchair without consideration of or accommodation for his current condition. I will also allow Sheppard to proceed on a deliberate-indifference claim against Britt, who allegedly made him walk to health services after he informed her that he felt unstable. Sheppard alleges that because she refused to bring his medication to him or allow him to use a wheelchair, he fell again and suffered additional harm.

Finally, Sheppard fails to state a claim under the Americans with Disabilities Act and the Rehabilitation Act. To state such a claim, Sheppard needed to allege that "(1) he is a qualified person (2) with a disability and (3) the Department of Corrections denied him access to a program or activity because of his disability." *Jaros v. Ill. Dept. of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012). Without addressing the first two prongs, I find that Sheppard fails to state a claim under either Act because I cannot reasonably infer that Sheppard was deprived access to a program or activity Sheppard explains that, while in the dayroom, he was required to sit in the plastic chair he was initially given. However, Sheppard does not allege that he was unable to go to the dayroom because he feared his chair would break. Despite his concerns

8

about his chair, he apparently went anyway—without incident. Given that he was never denied access to the dayroom, he fails to state a claim under these Acts.

**THEREFORE, IT IS ORDERED** that CO Ms. H, CO Dubois, and Sgt. Ramsey are **DISMISSED** based on Sheppard's failure to state a claim against them.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the amended complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendant R. Hepp.

**IT IS FURTHER ORDERED** that defendants Julie Ludwig, Candace Whitman, Laura Bartow, John Bahr, Bruce Siedschlag, Joy Tassler, Pat Chamberlin, Jared Spors, Jeremy Hanni, Brad Mlodzik, Anthony Holt, Jan Britt, and R. Hepp shall file a responsive pleading to the amended complaint within 60 days.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated at Milwaukee, Wisconsin, this 12th day of February, 2020.

                                        **BY THE COURT:**

                                        s/*Nancy Joseph*
                                        NANCY JOSEPH
                                        United States Magistrate Judge