UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHARLES SHEPPARD,
    Plaintiff,

v.                                Case No. 19-cv-1401

JULIE LUDWIG, et al.,
    Defendants.

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Charles Sheppard submits the following brief in support of his opposition to defendants' summary judgment motion.

## STATEMENT OF FACTS

Plaintiff directs the Court's attention to the facts outlined within Plaintiff's Proposed Findings of Fact ("PPFOF") and also Plaintiff's Response to Defs.' Proposed Findings of Fact ("Resp. to DPFOF") with supporting facts established within submitted declarations, discovery materials, and exhibits.

## STANDARD OF REVIEW

"One of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses." Cleotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). A party will be successful in opposing summary judgment when they present definite, competent evidence to rebut the motion." Smith v. Severn, 129 F.3d 419, 427 (7th Cir. 1997). Thus, "the question is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id.

"[T]he party resisting a motion for summary judgment receives the benefit of all reasonable inferences." Townsend v. Fuchs, 522 F.3d 765, 768 (7th Cir. 2008). Therefore the Court must examine the facts in a light most favorable to the non-moving party. McNeal v. Ostrov, 368 F.3d 657 (7th Cir. 2004). Furthermore, cases involving a person's state of mind, such as knowledge and intent, are generally factual issues inappropriate for resolution by summary judgment. Mendocino Envtl. Ctr. v. Mendocino County, 192 F.2d 1283, 1302 (9th Cir. 1999). Thus, the courts apply the summarry judgment standard with "special scrutiny" in cases that turn on these issues. Geier v. Medtronic, Inc., 99 F.3d 238, 240 (7th Cir. 1996).

## ARGUMENT

I. BY FAILING TO PROPERLY RESPOND TO SHEPPARD'S CLAIM'S
THAT THE CHAIR HE WAS BEING FORCED TO USE
COULDN'T HOLD UP HIS WEIGHT AND NEEDED A STURDIER CHAIR,
DEFENDANTS HAVE VIOLATED SHEPPARD'S 8th AMENDMENT RIGHTS.

A plaintiff claiming a violation of the Eighth Amendment must satisfy a two-prong test: (1) that the harm to the plaintiff was objectively serious; and (2) that defendants were deliberately indiffrent to plaintiff's health or safety. Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005); Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994).

(A) THE FACT THAT SHEPPARD TOLD THE DEFENDANTS THAT
HE'D HARMED HIMSELF IN THE PAST DUE TO HIS CHAIR BREAKING
AND SUFFERED AN CONCUSSION SHOWS THE MATTER WAS OBJECTIVELY SERIOUS.

"[A] prison official may be held liable under the 8th Amendment for denying humane conditions of confinement only if he knows that inmates face substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994).

Plaintiff Charles Sheppard spoke to Defendant Ludwig on 6-28-19. I spoke to her very thoroughly and in great detail described to Ms. Ludwig that I was having issues with the plastic chair I was issued. Plaintiff Sheppard went on to tell def. Julie Ludwig that he'd harmed himself at his previous institution (WSPF) and suffered an concussion as a result of that plastic chair breaking under his weight. He went on to tell Ms. ludwig that FLCI is offering him the exact same kind of chair that he harmed himself in at WSPF, and that this chair had already collapsed under him as well. ( See PPFOF ¶ 13). Sheppard also told LUdwig that he had a medical restriction to use a wheelchair in place of the plastic chair. (PPFOF ¶ 13). Plaintiff Sheppard wrote Candace Whitman about the entire exchange that he'd had with Ms. Ludwig and reiterated what that letter was about when he saw Ms. Whitman in person and Ms. Whitman stated that she did receive the letter so that means she was aware of the same issues. (See PPFOF ¶ 14).

(B) Plaintiff concedes that Warden Hepp is not liable based on the fact that the Warden's secretary claims that she never gave her the letter that plaintiff Sheppard wrote him, and plaintiff can't prove thats untrue.

(C) ICE BARTOW WAS AWARE THAT PLAINTIFF'S COMPLAINT ABOUT NEEDING AN MORE ADEQUATE CHAIR WAS SERIOUS AND THAT HIS PLEAS WERE BEING DISREGARDED.

As an non-medical official ICE Bartow was obligated to make sure Sheppard was not being ignored. While she had no authority to 2nd guess the medical providers decisions regarding whether a sturdier chair was required, see Askew v. Davis, 613 Fed. App'x 544, 548 (7th Cir. 2015) they did have an obligation to investigate Sheppard's claims that the medical professionals were ignoring him. Furthermore Laura Bartow has the authority to take corrective measures action all Bartow had to do was make one phone call to maintence and have them give me a more adequate chair. (See PPFOF ¶ 12).

Omissions can violate civil rights, and "under certain circumstances a state actor's failure to intervene renders him or her culpable under §1983." Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994). Defendant Bartow as the ICE still can't just turn a blind-eye to situations where inmates can be harmed if she doesn't immediately step in and rectify it. She was aware that I'd harmed myself in the past while at WSPF. (PPFOF ¶ 10).

(D) Defendants Ludwig, Whitman, Bartow, Bahr, Siedschlag, Tassler, Chamberlain, Spors, Hanni, Mlodzik, and Holt were deliberately indiffrent to my serious medical needs because they canceled my pusher and wheelchair restriction, the same day that I was released from the ER with an recomèndation from the ER doctor to relax and not be walking.
All of these defendants make up the special needs commitee and they were all aware that I'd suffered an concussion yet they still chose to cancel my wheelchair restriction. (See PPFOF ¶ 18). also (See PPFOF ¶ 19). As a direct result of the Special Needs Commitee or above listed defendants discontinuing Sheppard wheelchair for distance restriction he had to physically walk to HSU in order to get his medication on 7-3-19 and as a result he ended up falling over and rolling down the hill and hitting his head on the concrete reinjuring himself again and the Special needs committee is responsible for that. (See PPFOF ¶ 23).

Defendants Ludwig, Whitman, Bartow, Bahr, Siedschlag, Tassler, Chamberlain, Spors, Hanni, Mlodzik and Holt are liable because they "had a realistic opportunity to intervene to prevent the harm from occuring." Windle v. City of Marion, Indiana, 321 F.3d 658, 663 (7th Cir. 2003).

Plaintiff Sheppard was still suffering the aftereffects of his concussion when these defendants decided to remove his wheelchair and pusher restriction the exact same day he was returned from the ER.

(E) DEFENDANT JAN BRITT WAS DELIBERATELY INDIFFRENT FOR FORCING ME TO WALK TO HSU TO TAKE MY MEDICATION KNOWING I'D JUST BEEN RELEASED FROM THE ER AFTER SUFFERING AN CONCUSSION AND WASN'T FEELING GOOD AT ALL.

Defendant Jan Brittwas called on 7-3-19 by unit staff who called me into the office and allowed me to speak to Ms. Britt on the speaker phone. I personally told Ms. britt that I couldn't walk up that hill to HSU with a walker because I was feeling very loopy, dizzy, and disoritated. I explained to Ms. Britt that I'd just recently been released from the ER where I'd suffered an concussion she said she knew that. (See PPFOF ¶ 21·). ms. Britt told me that my wheelchair restriction had been taken away and that no one could push me to HSU. I asked Ms. Britt if she could bring the meds to me on the unit she said No, I need to come to HSU in person to refuse my meds or else I'd receive a conduct report. (PPFOF ¶ 22).

Because I didn't want to get a conduct report I grabbed my walker and attempted to walk up the hill to HSU. My balance and equilibrium were off and I fell down the hill and smacked my head on the concrete. (See PPFOF ¶ 23).

"credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions..." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986).

A prison official may be held liable for a constitutional violation if he knew about it and had the ability to intervene but failed to so so. Fillmore v. Page, 358 F.3d 496 (7th Cir. 2004).

PLAINTIFF IS ENTITLED TO PUNITIVE & COMPENSATORY DAMAGES.

"[E]vidence that suffices to establish an intentional violation of protected civil rights also may suffice to permit the [fact finder] to award punitive damages, provided the [court], in its discretionary moral judgment finds that the conduct merits a punitive award. No additional evidence [of reckless indiffrence] is needed." Merriweather v. Family Dollar, 103 F.3d 576 (7th Cir. 1996).

"A jury may be permitted to assess punitive damages in a §1983 action when the defendant's conduct involves reckless or callous indiffrence to the plaintiff's federally protected rights." Smith v. Wade, 103 S.Ct. 1625 (1983). "Acts are reckless when they represent a gross departure from ordinary care in a situation where a high degree of danger is apparent." Walker v. Covance Clinical Research Unit, Inc., 2009 U.S. Dist. LEXIS 17952 *51-52 (W.D. Wis).

Plaintiff has put forth evidence to demonstrate defendants' callous indiffrence towards him with respect to his claims. (See PPFOF, generally).

With respect to compensatory damages, plaintiff Sheppard did suffer injuries. (See PPFOFs, Declarations, Medical paperwork generally.)

## CONCLUSION

Defendants have failed to meet their burden, under Fed.R.Civ.P., Rule 56, in demonstrating that there is no genuine issue of material fact. Currently before the Court, thre are a number of genuine issues in dispute ( See Response to Defendants Proposed Findings of Fact, generally), and with the facts examined in the light most favorable to plaintiff Sheppard, summacry judgment for defendants must be denied.

Dated this 5th day of October 2020.

Respectfully Submitted,

x _Charles Sheppard_

CHARLES SHEPPARD #312596
Oshkosh Correctional Institution
P.O BOX 3310
oshkosh, Wisconsin 54903