UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHARLES SHEPPARD,
    Plaintiff,

v.                                         Case No. 19-cv-1401

JULIE LUDWIG, et al.
    Defendants.

## PLAINTIFF'S RESPONSE TO DEFENDANTS' PROPOSED FINDINGS OF FACT

plaintiff Charles Sheppard submits the following response to defendants' proposed finding of fact in support of his rebuttal to defendants' motion for summary judgment:

[Only responses are provided in their corresponding paragraphs]

1.) No dispute.
2.) No Dispute.
3.) No Dispute.
4.) No Dispute.
5.) No Dispute.
6.) No Dispute
7.) no Dispute.
8.) No Dispute
9.) No Dispute.
10) No Dispute.
11.) No Dispute.
12.) No Dispute.
13.) No Dispute.
14.) No Dispute.
15.) No Dispute.
16.) No Dispute.
17.) No Dispute.
18.) No Dispute.
19.) No Dispute.

-1-

20.) **DISPUTE >>>** I wrote Warden Hepp a request slip explaining to him everything that transpired between Myself and sgt. Ramsey in regards to the chair. I never received an response back. (See sheppard Declaration ¶12)

21.) No Dispute.
22.) No Dispute.
23.) No Dispute.
24.) No dispute.

25.) **DISPUTE >>>** On 6-28-19 I met with Julie Ludwig. At this meeting me and Ms. Ludwig, <u>SPOKE VER THOROUGHLY IN GREAT DETAIL</u> about the issues I was having with the plastic chair. I told Ms. Ludwig how I'd harmed myself at WSPF while sitting in the chair and suffered an concussion as a result of the plastic collapsing under me, because it was unable to hold up my weight. I told Ms. Ludwig that the chair I'm being offered here is exact same kind that I had at WSPF. I told Ms. Ludwig that the chair had already collapsed under me. I told her that FLCI C/Os were telling me that I can't be in the dayroom without the chair and that I must be seated at all times. I told Ms. ludwig that WSPF gave me a restriction to have my wheelchair in my cell to sit in since the wheelchair would hold my weight up but, that the c/os here weren't allowing me to do it. I told her this was urgent and that they have a metal chair in the basement on the unit already. (See Sheppard Declaration ¶17) **I also submitted Ms. Ludwig with paperwork showing her that I did have a restriction for an bariatric chair. (See Exhibit A [DOC-0529])**

26.) **DISPUTE>>>** I literally told Ms. Ludwig that I'd broke a similar chair at WSPF and suffered an concussion as a result. I also told her that the chair had already collapsed under me. (See Sheppard Declaration ¶ 17) also., (See **Exhibit B DOC-0440 Subjective section)**

27.) **DISPUTE >>>** She did have the authority to do it because the restriction was already approved by an doctor and in WICS.(See **Ex.A & C)**

28.) No Dispute.
29.) No Dispute.
30.) No Dispute.
31.) No Dispute.

-2-

32.) **DISPUTE >>>** I wrote Candace Whotman about my entire exchange about my chair with Ms. Ludwig and when I saw Ms. Whitman face to face if she'd received that letter she said that she had. **(See Sheppard Declaration ¶ 18)**

33.) **DISPUTE >>>** Dr. Gavin ordered that I be allowed to use a wheelchair to sit in in my room until my bariatric chair arrived which also means that there was a valid order for me to have a bariatric chair. This order did not end until 1-5-20. **(See Sheppard declaration ¶ 7) Also see Ex. A DOC-0529.**

34.) No Dispute.
35.) No Dispute.

36.) **DISPUTE >>>** On 7-2-19 ICE Bartow was apart of the Special Needs Commitee that allegedly made the decision to allow me to have a metal chair. **(See Sheppard Decl. ¶ 22) (Also see Whitman Decl., ¶31 Ex.1001 at 31-32)**

37.) No Dispute.
38.) No Dispute.
39.) No Dispute.
40.) No Dispute.
41.) No Dispute.
42.) No Dispute.
43.) No Dispute.
44.) No Dispute.
45.) No Dispute.
46.) No Dispute.
47.) No Dispute.
48.) No Dispute.
49.) No Dispute.

50.) **DISPUTE >>>** Sheppard already had a medical restriction for a wheelchair at that time. **(See Ex. C the order didn't expire until 5-15-20)**

51.) **DISPUTE >>>** I did have a wheelchair restriction **(See Ex.A & C)**

-3-

52.) No Dispute.

53.) **DISPUTE >>>** Sheppards restriction had not expired Dr. Gavin had put in a order for Sheppard to be allowed to use an wheelchair in place of a chair until his bariatric chair arrived and that restriction did not expire until 1-5-20.(See Sheppard decl., ¶ 7) also see Ex. A (DOC-0529)

54.) No Dispute.
55.) No Dispute.
56.) No Dispute.
57.) No Dispute.

58.) **DISPUTE >>>** Plaintiff OBJECTS to this assertion made by defendant Ludwig and Whitman because it is not based on personal knowledge, nor has Whitman or Ludwig put forth facts to support such conjecture. See Fed.R.Civ.P., Rule 56(c)(4). Furthermore defendants have not established that the hospital wanted me to have a seat walker or wheelchair. "[I]nferences and opinions must be grounded in observation or other first hand personal knowledge/experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors.." "**Visser v. Packer Eng'r Assoc., Inc.**, 924 F.2d 655, 659 (7th Cir. 1991) (citations omitted).

59.) No Dispute.
60.) No Dispute.

61.) **DISPUTE >>>** The comitee already knew that I had a wheelchair restriction they just chose to discontinue it.(see SHEPPARD declaration, ¶ 7)
**NO DISPUTE THAT THE COMMITEE KNEW THAT I HAD JUST GOTTEN BACK FROM THE ER AND SUFFERED AN CONCUSSION AS A RESULT OF THE CHAIR BREAKING.**
62.) No Dispute .
63.) No Dispute.
64.) No Dispute.

65.) **DISPUTE >>>** There is absolutely NO way to determine how much weight the plastic chairs can hold because maintence staff can not account for wear and tear that the chairs may have been through or how old the chairs are.
**(See Sheppard Declaration ¶ 5)**

66.) No Dispute.
67.) No Dispute.
68.) No Dispute.
69.) No Dispute. To the fact that I already had an metal chair when Kuehn tried to provide me one. **DISPUTE >>>** Fox Lake most certainlt DID have a bariatric chair on my unit because I was given a bariatric chair from the Unit Sgt. on 7-3-20 right from the basement that I was housed in and the bariatric chair held up my weight without any further incident. (See Sheppard Decl., ¶ 27)

70.) No Dispute that on 3-20-20 Mr. Kuehn may have received an work order to replace my metal chair. but id do **DISPUTE >>>** that my metal chair had broken at all. I was given a diffrent chair from the bariatric chair I was given on 7-3-20. I was given a very small chair whith metal legs that already had a broken **PLASTIC** back on it and the plastic back was broken, on it before it was ever even issued to me. I was given this diffrent chair because I got housed on Unit 5 after getting out of segregation and my original bariatric chair was still on Unit 3. (See Sheppard Declaration ¶ 28)

71.) No Dispute, as to Mr. Kuehn calling the Bureau of Corr. Enterprises and them telling him that they metal base chairs were designed to hold 250 lbs. **DISPUTE >>>** The plastic chair is not better for me under any circumstances because thers no way to determine the wear and tear on the plastichair. (See Sheppard Decl., ¶5). The plastic chair that I was given was old and flimsy with lots of scratches on it. (See Sheppard Decl.¶6) The plastic chair that Mr. Kuehn issued me made me fall backwards because the legs collapsed and hit my head on the metal bedframe and suffer a concussion. (See Sheppard Decl.,¶19). I had absolutely NO Issues with the metal bariatric chair that I was issued on 7-3-20. (See Sheppard Declaration ¶ 28)

72.) **DISPUTE >>>** I spoke with Ms. Britt personally on the speaker phone and I told her theres no way I could physically walk up that hill to HSU because I was feeling extremely loopy, dizzy, and disorientated. (Sheppard Decl.,¶24)

73.) **DISPUTE >>>** The officer called Ms. Britt and me and her was communicating on the speaker phone. (See Sheppard Declaration ¶ 24).

-5-

74.) **DISPUTE >>>** I personally told Ms. Britt that I couldn't walk to HSU because I was feeling loopy, dizzy, and disoriented. I told her I'd just been released from the ER where I was diagnosed with an concussion. Ms. Britt told me she'd give me a conduct report if I didn't come to HSU, to sign a refusal. (See Sheppard declaration ¶ 24).

75.) **DISPUTE >>>** I personally told Ms. Britt I couldn't walk to HSU because I was feeling loopy, dizzy, and disoriented. I told her I'd just been released from the ER where I was diagnosed with an concussion. (See Sheppard decl.,¶24).

76.) **DISPUTE >>>** See ¶¶ 74-75, above.

77.) No Dispute.
78.) No Dispute.

79.) **DISPUTE>>>** I got dizzy fell down the hill and smacked my head on the concrete harming myself again. (See Sheppard declaration ¶ 25).

80.) **DISPUTE >>>** I was out of it for awhile but, I recalled several officers coming to pigk me up off the ground and take me to HSU once they got me transferred to a wheelchair. (See Sheppard declaration ¶ 26).

81.) **DISPUTE >>>** When I got to HSU Ms. Britt asked me what happened? "I told her that I fell over and hit my head on the concrete." I never once told her that I just got dizzy and sat down. (See Sheppard decl., ¶ 26·)

82.) **DISPUTE >>>** I told Ms. Britt that I fell over and hit my head on the concrete. (See Sheppard declaration ¶ 26).

Dated this 3rd day of October 2020.

Respectfully Submitted,

x *Charles Sheppard*

Charles Sheppard #312596
Oshkosh Corr. Institution
P.O BOX 3310
Oshkosh, WI 54903